UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

OLA AL ZUHAIRI,

      Plaintiff,

                                  Hon. Phillip J. Green

v.

                                  Case No. 1:25-cv-0568-PJG

UNITED STATES DEPARTMENT
OF STATE, et al.,

      Defendants.

_____/

**<u>OPINION</u>**

Plaintiff brings this action, claiming that the U.S. State Department has unreasonably delayed its adjudication of her fiancé's visa application, in violation of her Due Process rights and the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.*[1]  Plaintiff seeks a writ of mandamus to require the State Department to adjudicate the visa application within sixty days.  The State Department has moved to dismiss the complaint, arguing that the Court lacks subject-matter jurisdiction, and, in the alternative, that the complaint fails to state a cognizable claim.  (ECF No. 5, 6).  Plaintiff has responded (ECF No. 10) and the State Department has replied (ECF No. 12).

---

[1] The named defendants also include Secretary of State Marco Rubio; the U.S. Embassy in Ankara, Turkey; and the embassy's Chargé d'Affaires, Michael Goldman. For purposes of this opinion, the Court will refer to the defendants collectively as the State Department.

Having reviewed the parties' briefs, the exhibits, and other relevant materials, the Court has determined that oral argument is unnecessary.  For the reasons articulated below, the Court will dismiss the complaint for lack of subject-matter jurisdiction.  Having determined it lacks jurisdiction to consider this matter, the Court should not—and will not—address the merits of the allegations in the complaint.

## BACKGROUND

Plaintiff Ola Al Zuhairi is a U.S. citizen; her fiancé, Aiman Salih Qaddoori Qaddoori, is an Iraqi citizen.  (Compl. ¶¶ 1, 2, ECF No. 1, PageID.2).  Quite understandably, Plaintiff wants her fiancé to be able to join her in the United States.  Accordingly, on July 11, 2022, she filed an I-129F visa petition on his behalf.  (*Id.* at ¶¶ 10, 13, PageID.3-4).  The United States Citizenship and Immigration Services (USCIS) approved the petition on August 14, 2023, and forwarded it to the State Department's National Visa Center for further processing.  (*Id.* at ¶¶ 15-16, PageID.4).  The matter was then sent to the U.S. Embassy in Ankara, Turkey, to conduct an interview of Mr. Qaddoori.  (*Id.* at ¶ 16).  That happened on February 14, 2024.  (*Id.* at ¶ 17).  The consular officer who conducted the interview asked for additional information, which Mr. Qaddoori provided.  (*Id.*).  The State Department's Consular Consolidated Database shows that the visa was refused the same day as his interview for the stated reason that Mr. Qaddoori "failed to demonstrate his eligibility for the visa."  (Peterson Decl. ¶ 4, ECF No. 6-1, PageID.62).  "The consular officer determined that additional security screening was required."  (*Id.*).

2

On August 8, 2025, the State Department filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction; in the alternative, it argues that the complaint should be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim.  (ECF No. 5, 6).  Plaintiff opposes the motion, arguing, in relevant part, that the consular officer's actions on February 14, 2024, did not constitute a "final denial" of the visa application, and that the State Department has yet to fully adjudicate it.  (ECF No. 10, PageID.81-85).

## STATUTORY FRAMEWORK

The Immigration and Nationality Act (INA) prohibits a noncitizen from being admitted into the United States without first being found eligible for, and having received, a visa.  Noncitizens seeking a visa on the basis that they are engaged to be married to a U.S. citizen must satisfy certain statutory requirements.  First, the engaged citizen must file with the USCIS a Form I-129F Petition for Alien Fiancé, demonstrating, among other things, a bona fide intention to marry the noncitizen.  *See* 8 U.S.C. §§ 1101(a)(15(K), 1184(d); 8 C.F.R. § 214.2(k).  If the USCIS approves the petition, it is forwarded to the State Department's National Visa Center, which forwards the visa case to an embassy or consulate where the noncitizen party may apply for a nonimmigrant visa.  *See* 8 U.S.C. § 1202(h); 22 C.F.R. §§ 40.1(1), 41.103. The applicant must provide certain documentation and appear for an interview with a consular officer.  *See* 8 U.S.C. §§ 1202(d), (h).

The consular officer must ensure that the applicant is not inadmissible under any provision of the INA.  *See* 8 U.S.C. § 1361.  The noncitizen applicant bears the

3

burden or establishing eligibility for a visa.  *See* 8 U.S.C. § 1361.  The decision to issue or refuse a visa application rests with the consular officer.  *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. § 42.81.  Unless satisfied that the applicant has demonstrated eligibility for a visa, the consular officer must refuse the visa application.  *See* 8 U.S.C. § 1361; *see also* 8 U.S.C. § 1201(g) ("No visa . . . shall be issued to an alien if . . . it appears to the consular officer, [from the application statements or papers] that such alien is ineligible to receive a visa" or if "the consular officer knows or has reason to believe that [the] alien is ineligible to receive a visa").  At the conclusion of the interview, the consular officer must do one of three things:  (1) issue the visa, (2) refuse the visa under applicable statutory provisions, or (3) discontinue granting the visa pursuant to a notice from the Attorney General under INA 243(d).[2]  *See* 22 C.F.R. 41.121(a).  If the visa is refused, the consular officer has discretion to afford the noncitizen applicant an opportunity to present additional information, which may be used at a later date to reconsider the refusal.  (*See* U.S. Department of State, Bureau of Consular Affairs, Administrative Processing Information (available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited March 24, 2026)).

---

[2] Section 243(d) of the INA allows the Secretary of State to impose visa sanctions against countries upon notice from the Attorney General that the government of those countries are denying or unreasonably delaying the acceptance of nationals and residents ordered removed to those countries.  This provision is not at play in this case.

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  This Court must assume that it lacks subject matter jurisdiction unless Plaintiff meets her burden of establishing it.  *See id.* (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

Congress has granted original jurisdiction to district courts in "any action in the nature of mandamus" to compel agency action.  28 U.S.C. § 1361.  But that is a "drastic [remedy], to be invoked only in extraordinary situations."  *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).  The Court's jurisdiction under the APA is similarly circumscribed.[3]  A plaintiff seeking relief under either jurisdictional grant must show, as a prerequisite to jurisdiction, that a government agency has failed to carry out "a mandatory, nondiscretionary duty."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004).  Absent such a showing, the Court lacks authority to even hear the case.  *See Carson v. U.S. Office of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011).

---

[3] " 'When a [plaintiff] seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits.' "  *Huron Mountain Club v. U.S. Army Corps of Engineers*, 545 F. App'x 390, 393 (6th Cir. 2013) (quoting *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004)).

5

A Rule 12(b)(1) challenge to subject matter jurisdiction may be categorized as a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *factual* attack . . . is a challenge to the factual existence of subject matter jurisdiction." *Id.* (emphasis in original). In such cases, there is no presumption of truthfulness to the plaintiff's factual allegations in the complaint, and the court is free to weigh the evidence to determine whether the jurisdictional prerequisites have been met. *See id.* The party invoking jurisdiction bears the burden of establishing the elements of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The instant motion is properly characterized as a factual attack, as the issue of jurisdiction turns on whether there remains any mandatory, nondiscretionary duty the State Department owes Plaintiff.

## **DISCUSSION**

The State Department advances three arguments in support of its contention that the Court lacks subject matter jurisdiction over Plaintiff's claims. First, that the February 14, 2024, visa refusal discharged its statutory obligation under the INA, the result of which either rendered Plaintiff's claims moot or deprived her of standing. (ECF No. 6, PageID.46-49). Second, that the doctrine of consular non-reviewability bars judicial review of Plaintiff's claims. (*Id.* at PageID.49-53). Third, that Plaintiff lacks standing to bring claims on behalf of her fiancé's visa application. (*Id.* at PageID.53-54).

In opposition to the pending motion, Plaintiff contends that she has standing to address injuries she claims to have suffered as a result of the alleged delay in

processing her fiancé's visa application, including personal, professional, and financial hardship. (ECF No. 10, PageID.75-77). She also asserts—relying on out-of-circuit caselaw—that there can be no "final decision" as long as the State Department continues the "administrative processing" of her fiancé's visa application. (*Id.* at PageID.77-79). In addition, Plaintiff argues that the doctrine of consular non-reviewability is inapplicable in this case because the consular officer's February 14, 2024, refusal to issue a visa was not a "final decision." (*Id.* at PageID.81-85).

For the reasons articulated below, the Court finds that the consular officer's February 14, 2024, decision to refuse the visa discharged the State Department's legal obligations regarding Mr. Qaddoori's visa application, depriving Plaintiff of standing to seek relief regarding the administrative adjudication of that matter. The Court further finds that Plaintiff otherwise lacks standing to bring this action on behalf of her fiancé, and that the doctrine of consular non-reviewability applies to this case.

### I.    Plaintiff Lacks Standing to Bring the Instant Claims.

The State Department contends that the consular officer's February 14, 2024, refusal of Mr. Qaddoori's visa discharged its duty to adjudicate his visa application and, accordingly, Plaintiff's pending claims are either moot or she lacks standing to raise them. The Court agrees that the visa refusal satisfies the State Department's statutory obligation.

At the outset, however, the Court notes that this is an issue of standing, not mootness. "Mootness has been described as the doctrine of standing set in a time

frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). As the visa refusal predates the filing of this case, the Court will address Plaintiff's standing, or lack thereof, rather than mootness.

> A. *The consular officer's refusal to issue the visa discharged the State Department's statutory obligations under the INA.*

The doctrine of standing was developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At a minimum, to establish standing, a plaintiff must have (1) suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury is redressable by a favorable court decision. *Lujan*, 504 U.S. at 560-61.

The essence of the dispute between Plaintiff and the State Department is whether the Department has any continuing, nondiscretionary duty to further adjudicate Mr. Qaddoori's visa application. (*See* Compl. ¶¶ 22, 24, ECF No. 1, PageID.5 (claiming that the State Department has "refused to adjudicate" and that the visa application "has been in administrative processing beyond a reasonable time period")). Having reviewed the facts and applied them to the statutory requirements of the INA, the Court has determined that the State Department has fulfilled its non-discretionary obligations, and that there is nothing left that the Court can order be done.

The State Department has submitted evidence that Mr. Qaddoori was interviewed by a consular officer at the U.S. Embassy in Ankara, Turkey, on February 14, 2024.  The evidence also shows that his visa was refused at the conclusion of that interview.  Nothing in the materials Plaintiff has submitted to this Court refutes that fact.  If anything, Plaintiff's complaint essentially concedes it.  (*See* Compl. at ¶¶ 25-26, ECF No. 1, PageID.5).  Rather, Plaintiff asserts that the refusal is not a final decision because the consular officer, by requesting additional information, kept open the "administrative processing" of Mr. Qaddoori's visa application.  (*See* ECF No. 10, PageID.78-80).[4]

Under the INA, "[a]ll immigrant visa applications must be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b).  The statute provides, in pertinent part, that, after an interview, the consular officer must either issue the visa or refuse it if the alien is ineligible.  *See* 8 U.S.C. § 1201(a), (g).  The implementing regulations are entirely consistent with these statutory provisions.  *See* 22 C.F.R. § 42.81(a).  There is no requirement in either the statute or the regulations "that a refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing'."  *Yaghoubnezhad v. Stufft*, 734 F. Supp.3d 87, 101 (D.D.C. 2024). Absent such a requirement, the State Department has no continuing, nondiscretionary duty to further adjudicate Mr. Qaddoori's visa application.  Moreover, "[t]he possibility

---

[4] Plaintiff relies on several out-of-circuit opinions in support of her argument. (*See* ECF No. 10, PageID.78-79).  None of these opinions are binding, and the Court finds none of them persuasive in light of the plain statutory language in the INA and the in-circuit decisions cited herein.

that [the State Department] will reconsider [the visa] refusal is 'immaterial, when no statute, regulation, or other source imposes a duty to reconsider it.' " *Sankari v. U.S. Department of State*, Case No. 2:24-cv-12975, 2025 WL 1550231, at *5 (E.D. Mich. May 30, 2025) (citing *Pegah Z. v. Blinken*, Case No. 4:24-cv-0529, 2025 WL 629343, at *4 (S.D. Tex. Feb. 4, 2025); *Omar v. Blinken*, 756 F. Supp.3d 520, 533 (S.D. Ohio 2024)); *see also Saad v. Risch*, Case No. CV 18-12074, 2019 WL 3842898, at *2 (E.D. Mich. Aug. 15, 2019) ("[T]his Court concludes that, subsequent to their interviews, the immigrant visa applications for Hamza and Yusuf were refused and placed in administrative processing in order to verify their qualifications.  That refusal was in fact a determination by the Consular, regardless of the additional information requested."); *cf. Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal.").

The Sixth Circuit decision in *Hussein v. Beecroft*, 782 F. App'x 437 (6th Cir. 2019), is instructive here.  In that case, a U.S. citizen filed a petition to have his Yemeni wife granted a visa as an "immediate relative."  *Id.* at 439-40.  The Yemini spouse attended several consular interviews.  The consular officer refused the visa, and asked for confirming DNA tests of family members to confirm the marital relationship.  *Id.* at 440.  While the visa dispute was ongoing, Hussein and his purported wife filed suit in the Eastern District of Michigan, seeking a writ of mandamus.  *Id.*  The district court granted the government's motion to dismiss the case for lack of subject matter jurisdiction, finding that the consular's decision to

10

refuse the visa mooted their claim. *Id.* The Sixth Circuit affirmed, notwithstanding the fact the visa application remained in "administrative processing." *Id.* at 442-43.

Consistent with the holding in *Hussein*, this Court finds that the State Department fully discharged its statutory duty through the consular decision to refuse Mr. Qaddoori's visa. That it may consider additional information through some ongoing discretionary administrative process is an insufficient predicate upon which to establish standing—and accordingly, subject matter jurisdiction—to hear this case.

### B. *Plaintiff lacks a constitutionally protected interest in obtaining a visa for her fiancé.*

Plaintiff claims that the State Department's "delay and failure to act" on her fiancé's visa application has violated her due process rights. (Compl. ¶ 32, ECF No. 1, PageID.6). Plaintiff does not identify, however, the substantive right that triggers her entitlement to due process of law.

Plaintiff's attempt to challenge the non-issuance of her fiancé's visa through her own due process claim runs headlong into the barrier raised by the Supreme Court's decision in *Department of State v. Munoz*, 602 U.S. 899 (2024). In that decision, the Court held that a U.S. citizen has no constitutionally protected interest to have a non-citizen family member reside in this country. *See id.* at 916-17; *see also Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) ("American residents—whether citizens or legal residents—do not have a constitutional right to require the National Government to admit noncitizen family members into the country.").

11

Plaintiff's attempts to distinguish her claim from *Munoz* is unavailing.  She offers no legal basis to support her novel contention that a citizen may challenge the adequacy of the visa adjudication *process*, even though she lacks standing to challenge the adjudication *itself*.  None of the cases she cites sustains her burden of establishing standing to bring her own due process claim regarding her fiancé's visa application.  Several of the cases cited in Plaintiff's brief essentially serves the opposite purpose.  *See Shahijani v. Laitinen, et al.*, Case No. 2:23-cv-3967, 2023 WL 6889774, at *5 (S.D. Cal. Oct. 6, 2023) (noting that "the regulation of spousal immigration does not impinge on a spouse's fundamental liberty interest"); *Awal v. Department of State*, Case No. 24-cv-382, 2024 WL 4979661, at *3-4 (D. Minn. Dec. 4, 2024) (*Munoz* foreclosed due process claims over the alleged "fairness in administrative adjudication" of a spouse's visa application); *Alam v. Blinken*, Case No. 2:24-cv-1103, 2024 WL 4804557, at *10 (E.D. Cal. Nov. 15, 2024) (*Munoz* foreclosed due process claims for untimely adjudication of non-citizen spouse's visa application).  Accordingly, Plaintiff's due process claim will be dismissed for lack of subject matter jurisdiction.

II.  The Doctrine of Consular Non-reviewability Bars Judicial Review of Plaintiff's Claims.

The State Department argues that this Court lacks subject matter jurisdiction to consider Plaintiff's claims under the doctrine of consular non-reviewability.  (ECF No. 6, PageID.49-53).  The Court agrees.

The Supreme Court has long held that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's

political departments largely immune from judicial control.' " *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). "Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.' " *Munoz*, 602 U.S. at 907 (quoting *Harisades v. Shaughnessy*, 342 U.S. 580, 588-591 (1952)). Such decisions are " 'final and conclusive.' " *Munoz*, 602 U.S. at 908 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). "The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Munoz*, 602 U.S. at 908. This has come to be known a "the doctrine of consular nonreviewability." *Id.*

The Supreme Court has recognized a narrow exception to this doctrine when "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Trump*, 585 U.S. at 703. When that exception applies, the Court is limited to determining whether the consular official gave a "facially legitimate and bona fide reason" for denying the visa. *Munoz*, 602 U.S. at 908 (internal quotations omitted). If so, the Court may engage in no further inquiry; it may not review the adequacy or the merits of the decision, nor may it balance the reason against the asserted constitutional right. *Id.* (citing *Kerry v. Din*, 576 U.S. 86, 104 (2015)).

The doctrine of consular non-reviewability applies to the instant case. The U.S. consular official in Ankara, Turkey, refused to issue a visa to Mr. Qaddoori on February 14, 2024, noting that Mr. Qaddoori "failed to demonstrate his eligibility for the visa sought." (Peterson Decl. ¶ 4, ECF No. 6-1, PageID.62).

Plaintiff's effort to avoid the application of this doctrine misses the mark.  It is based on her argument that the doctrine applies only to "final" decisions, and her contention that the State Department has not yet rendered a "final" decision on the visa.  Plaintiff asks the Court to "assum[e] the truth" in her allegation that a visa decision has not yet been made.  (ECF No. 10, PageID.81).  As this is a factual attack on subject matter jurisdiction, the Court need not afford Plaintiff a presumption of truth regarding the allegations in her complaint.  *See Ritchie*, 15 F.3d at 598 (in factual attacks to subject matter jurisdiction, there is no presumption of truthfulness to the plaintiff's factual allegations, and the court is free to weigh the evidence to determine whether the jurisdictional prerequisites have been met).  As discussed earlier in this opinion, the Court has weighed the evidence and found that the consular official completed the nondiscretionary duties owed to Mr. Qaddoori regarding his visa application.  There is no requirement that the State Department put a "final" label on the decision; nor does it matter to this issue whether there is some continued "administrative processing" of the visa.  *See Yaghoubnezhad*, 734 F. Supp.3d at 101.  Accordingly, the doctrine of consular non-reviewability applies in this case.  *See Baaghil*, 1 F.4th at 432 (holding that the doctrine applies to visa refusals).

14

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (ECF No. 5) is **GRANTED**. The Court **DISMISSES** the complaint (ECF No. 1) without prejudice for lack of subject-matter jurisdiction. An Order and Judgment consistent with this Opinion will enter.


Date: March 27, 2026                    /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge

15